

# AIRTIME GATEWAY AGREEMENT

THIS AIRTIME GATEWAY AGREEMENT (this "Agreement") is entered into this 1st day of August, 2005, by and amongst Via One Technologies, Inc., New Jersey Corporation having its principal place of business at 525 Broadway, Fifth Floor, New York, New York, 10012 ("VIAONE"), and Mr Prepaid, a(n) MARYLAND company, having its principal place of business at 300 Reisterstown Rd, E BALT, MD 21208 ("Distributor").

WHEREAS, VIAONE has developed an electronic system for the sale of prepaid airtime and other bill payment transactions (the "Airtime Gateway") that enables its partners, distributors, agents and retail locations, among others, to electronically purchase and/or provision prepaid services from Via One, perform related payment transactions and electronically monitor these activities;

WHEREAS, VIAONE is in the business of providing products and services, including but not limited to: PINS that reflect different quantities of airtime with different telecommunications carriers ("PINS"), and electronic bill payment transactions for various providers, to retail stores and outlets in the United States and worldwide (collectively, "Products and Services");

WHEREAS, Distributor is in the business of supplying various products and services to a variety of retail stores and outlets ("Retail Merchants") for resale directly to consumers ("End Users");

WHEREAS, VIAONE, seeks to work with Distributor to provide Products and Services to Distributor for Distributor's sale to merchants that have contracted or will contract with Distributor to provide such Products and Services to End Users ("Retail Merchants");

WHEREAS, Distributor desires to become a distribution partner of VIAONE and VIAONE desires to make Distributor a distribution partner of VIAONE, both for the distribution of VIAONE Products and Services;

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

**1. Issuance of Distributor ID Number.** Upon signing this Agreement, VIAONE shall (i) create a unique account ("Distributor Account") for Distributor within the Airtime Gateway for the purpose of purchasing Products and Services from VIAONE in accordance with the terms and conditions of this Agreement, and (ii) issue Distributor a "Distributor identification number" ("Distributor ID") and a security password ("Security Password"). Such Distributor ID and Security Password will enable Distributor to access the Airtime Gateway, create a user changeable Password ("Distributor Password"), access the Distributor Account, purchase Products and Services from VIAONE and manage all related activity on Distributor Account on the Airtime Gateway.

**2. Term.** This Agreement shall become effective on the date it is executed by VIAONE and, together with the attached ACH Authorization Form, by Distributor (such date, the "Execution Date"). Notwithstanding the foregoing or anything herein, this Agreement shall not be valid unless it coexists at all times with a binding Personal Guarantee provided by Mr. Daniel Ely. Both Daniel Ely and Distributor acknowledge, declare and agree that if Distributor transacts business under this Agreement, it is assumed that the Personal Guarantee is valid and binding on Mr. Daniel Ely. As such, neither party will at any time, before, during or after termination take any action or put forth any argument that such Personal Guarantee is not valid and/or does not bind Mr. Daniel Ely to personally assure payment, using all of his personal assets, for any and all obligations or liabilities incurred by Distributor under this Agreement. From and after the Execution Date, this Agreement shall continue in full force and effect for an initial term of two (2)



Via One
Distributor  7/29/05



**AIRTIME GATEWAY AGREEMENT**

years, unless earlier terminated as provided herein. Upon the expiration of the initial term, this Agreement shall automatically renew for successive one (1) year terms; <u>provided, however,</u> that either party may elect not to renew this Agreement by providing written notice to the other of its intention not to renew this Agreement, not less than thirty (30) days prior to the expiration of the then current term. Upon termination of this Agreement, a settlement computation will be made to determine the final amount of any monies owed between the parties. Notwithstanding the foregoing, either party may terminate this Agreement at any time by providing the other party with one (1) weeks notice.

**3. Purchasing Products and Services**

a. Distributor shall purchase Products and Services through the Airtime Gateway. Once a Product or Service has been requested using the Airtime Gateway, and such Product or Service has been delivered by VIAONE to Distributor or any affiliate of Distributor designated to receive such Products or Services on Distributor's behalf, such Product or Service shall be deemed purchased by Distributor. No refunds or credits will be issued on such Product except where such Product is invalid, previously activated or not usable in accordance with the carriers' programs.

b. Distributor shall access the Airtime Gateway through (i) its own electronic interface, compatible with the VIAONE Airtime Gateway API, or (ii) a third party PIN terminal processor ("Third Party Processor") selected by Distributor and approved by Via One. Via One shall require that Distributor and/or its Third Party Processor furnish a merchant ID, terminal ID, Retail Merchant Name and ZIP Code associated with each transaction made through the Airtime Gateway.

c. In the event that Distributor contracts with a Third Party Processor to procure Products and Service on its behalf with VIAONE, between VIAONE and Distributor, such Third Party Processor shall be deemed to be an agent of Distributor, acting with Distributor's full approval and authority, and any order or action of such Third Party Processor shall be deemed to be an order or act of Distributor for the purposes of this Agreement. As such, Distributor agrees to be completely responsible for any and all activities of, or liabilities created by, such Third Party Processor on the Airtime Gateway. Distributor shall also be responsible for ensuring that such Third Party Processor complies in full with the terms and conditions of this Agreement when acting on Distributor's behalf.

d. In the event that a dispute arises concerning any invoices or purchases, Distributor shall be required to submit written notice of such dispute, error or discrepancy within forty-five (45) days of the disputed transaction. In the event that Distributor fails to submit notice of such a dispute within such time frame, such failure shall be deemed a waiver of any right to dispute such transaction thenceforth. Notwithstanding the foregoing, Distributor shall be required to pay for any disputed charges as such charges are due in accordance with this Agreement. In the event that a disputed charge is deemed incorrect or invalid, VIAONE shall be required to issue Distributor a credit on the Invoice or charges immediately following such discovery.

e. In the event of a dispute between Distributor and VIAONE relating to sales, the Airtime Gateway shall be the determining authority.

f. Distributor acknowledges and agrees that Distributor is solely responsible for all activities transacted by Distributor, any Third Party Processors used by Distributor or any Retail Merchant that Distributor contracts with for any and all transactions with VIAONE using Distributor's Distributor ID, Distributor Password or Distributor Account Information. Distributor further agrees that VIAONE will not be liable for any loss or damages arising from unauthorized use of the Distributor Account by way of any fraudulent use of a Distributor's ID, Password or

Page 3 of 11
AG – S – 2 – c – David Ely Advertape - 6

Via One _____
Distributor ⁂ /
7/29/05



**AIRTIME GATEWAY AGREEMENT**

Account information by any third party, including but not limited to any affiliate of Distributor, any Third Party Processor or any Retail Merchant. Distributor will indemnify, defend, and hold VIAONE harmless from and against any claims, losses, actions, demands, liabilities, and damages, including attorney's fees, resulting from any unauthorized use of any usernames, identification numbers or passwords issued to Distributor by VIAONE.

### 4. Products, Services and Pricing

a. <u>PINS</u>: PINs shall be supplied to Distributor at a specified discount rate, which when expressed refers to a discount of face value. The discount rates that VIAONE provides PINS to Distributor ("Distributor Buy Rates") are attached to this Agreement in the document marked Product Pricing Sheet, <u>provided however</u>, that Distributor acknowledges and agrees that VIAONE, in its sole discretion, may modify, alter or change Distributor Buy Rates from time-to-time in accordance with its own terms and policies, provided that:

  i. VIAONE shall not be permitted to alter the Distributor Buy Rates for Boost PINS at any time if the result would be that the Distributor's Buy Rates for Boost PINS are higher than those suggested by Boost for Master Distributors; and

  ii. VIAONE shall only be permitted to increase the Distributor's Buy Rates in the event that VIAONE's suppliers increase VIAONE's Buy Rates. In such event, such increase shall only be permitted insofar as it works to offset's the increase faced by VIAONE against its then current Buy Rates.

b. Other Products: VIAONE shall work with Distributor to introduce additional products from time-to-time on a product by product basis for which all pricing shall be determined at the time of such product's introduction.

c. VIAONE may at any time restrict Products and Services offered to Distributor or a given Retail Merchant for any reason whatsoever, including but not limited to any legal or contractual restriction that requires VIAONE to restrict or structure its product offering in any way or form.

### 5. Liability for Purchases and Payment Procedures.

a. ~~Upon signing this Agreement, Distributor shall provide VIAONE with a cash deposit of ten thousand dollars ($10,000) ("Distributor Deposit"). Upon the Execution Date, or immediately thereafter, Distributor shall wire VIAONE ten thousand dollars ($10,000). Such sum shall be the Distributor Deposit which shall be returned to Distributor upon termination of this Agreement, less any amounts deducted to offset amounts owed to VIAONE under this Agreement which may remain outstanding and unpaid upon termination of this Agreement~~ Upon the Execution Date, Distributor shall be permitted to purchase Products and Services from VIAONE as contemplated herein. Whenever Distributor's aggregate purchases or account balance exceeds a certain threshold ("Credit Limit"), VIAONE shall be permitted to ACH Distributor's Account for difference between the Credit Limit and the then outstanding balance in the Distributor's Account. Such ACHs may be initiated by VIAONE on a daily basis or as VIAONE deems appropriate. As of the Execution Date, the Credit Limit shall be one hundred thousand dollars ($100,000). Notwithstanding the foregoing, VIAONE and Distributor agree that during the term of this Agreement, VIAONE shall be permitted to review the Credit Limit then in effect at the end of each Calendar month. At such time, VIAONE may, in its sole discretion, change the Credit Limit then in effect by providing Distributor with written notice no less that seven calendar days after end of the calendar month. In such event, the new Credit Limit shall be effective, within three (3) business days of Distributor receiving written notice of such change. Additionally, commencing thirty (30) days following the Execution Date, if at any time during the term of this Agreement, Distributor's aggregate purchases of Products and Services during any



AIRTIME GATEWAY AGREEMENT

five day period is less than then effective Credit Limit, VIAONE, in its sole discretion may reduce the then effective Credit Limit to equal the Distributor's anticipated five day aggregate purchase volume based upon the previous 30 day period. In such event, VIAONE shall provide Distributor with five (5) days notice before such reduction becomes effective.

b. Notwithstanding anything in this Agreement, the Credit Limit shall be reduced to zero ($0.00) and any and all balances in Distributor's Account shall become immediately due to VIAONE:

    i. Automatically (A) upon termination of this Agreement for any reason whatsoever, (B) upon any event which results in the Personal Guarantee of Mr. Ely becoming null and/or ineffective for any reason whatsoever, including but not limited to any action or event which results in Mr. Ely's relationship with the company materially changing, (C) if an ACH against Distributor's Account is refused for any reason whatsoever, or (D) if either Mr. Ely or Distributor files for bankruptcy or makes any declaration to any creditor indicating an inability to pay then current liabilities or seeking relief of any financial obligations, or

    ii. Upon notice by VIAONE, which shall be effective three calendar days after providing such Notice to Distributor, if (1) Distributor breaches this Agreement in any way at any time, including but not limited to the confidentiality provisions contained in section 7 of this Agreement, or (2) if VIAONE in its reasonable judgment at any time during the course of this Agreement, has good reason to believe that Distributor or Mr. Ely may be unable to repay the full amount of the then effective Credit Limit.

~~b.~~c. ~~VIAONE shall be permitted to ACH Distributor's account for all purchases and amounts due VIAONE from Distributor on a daily basis.~~ Distributor acknowledges and agrees that the failure to pay any amount due for ~~Products delivered to Distributor or any amounts due~~ VIAONE under this Agreement, shall be deemed a material breach of Distributor's obligations under this Agreement. As such, in the event that (i) Distributor fails to wire amounts to Via One and/or (ii) an ACH for amounts due VIAONE is returned due to insufficient funds on the part of Distributor, Distributor shall also be charged a $300.00 administrative fee per failed ACH or per missed wire. Additionally, in such event, VIAONE, at its option, may immediately cease making available its Products and Services to Distributor, immediately reduce Distributor's Credit Limit to zero, and may immediately demand any and all amounts due VIAONE at such time. If Distributor subsequently fails to remit payment to VIAONE for all amounts then due VIAONE within two (2) calendar days, such failure shall be deemed a material breach of this Agreement and VIAONE may terminate this Agreement pursuant to such breach immediately thereafter and in addition seek any other remedy available to VIAONE in equity, by contract or in law, including but not limited to taking actions under any security agreements or personal guarantees, including but not limited to the personal guarantee provided by Mr. Ely pursuant to this Agreement.

~~c.~~d. In addition to securing all liabilities incurred under this Agreement with all assets of the ~~the~~ Distributor ~~Deposit~~, Mr. Daniel Ely, ~~as~~ an officer and shareholder of Distributor, and as a direct beneficiary of this Agreement, agrees to sign a personal guarantee, in which he agrees to secure all liabilities of Distributor, using his personal assets. Distributor acknowledges, understands and agrees that VIAONE would not provide Distributor with the ability to purchase Products or Services hereunder, in accordance with the terms and conditions of this Agreement without the personal guarantee of Mr. Daniel Ely and that such guarantee, along with other terms and conditions contained herein, is a material inducement for VIAONE in executing and agreeing to the terms and conditions of this Agreement.

e. Distributor agrees to provide VIAONE with written notice immediately in the event of any occurrence described in Section 5bi and 5bii. Distributor acknowledges and agrees that failure



**AIRTIME GATEWAY AGREEMENT**

to provide VIAONE with such notice shall be deemed a material breach of this Agreement and Distributor and Mr. Ely agree to hold VIAONE harmless from any losses or liabilities VIAONE incurs as a result of Distributor's failure to provide VIAONE with such notice in such event.

**6. Customer Service.** VIAONE will not provide customer service directly to Retail Merchants. The parties recognize and understand that the various cellular carriers provide customer service directly to end-user purchasers of VIAONE's prepaid product. The customer service department of each party will be available to the representatives of the other party during its normal business hours to further the objectives of this Agreement.

**7. Confidentiality; Non-Disclosure.** Distributor and VIAONE acknowledge that they will come into possession of certain trade secrets, confidential business information and other proprietary information (collectively, the "Confidential Information") of each other in connection with the relationship created by this Agreement. Except as may be narrowly required in connection with carrying out its duties hereunder, the Parties agree on behalf of itself, its employees, principles, officers, directors and affiliates, that no such party shall, at any time, whether during or after the termination of this Agreement, use or reveal to any person or entity any Confidential Information of the other party to any third party. In addition, the parties agree that they shall not disclose the terms, provisions or other subject matter of this Agreement ~~with any party unless expressly permitted by this Agreement or otherwise required by applicable law or by order of a governmental agency with appropriate jurisdiction~~ without the written permission of the other party, it being understood that such prohibition on disclosure shall be applicable notwithstanding the fact that any information contained herein may fall into an exception under industry standard confidentiality agreements. Notwithstanding anything in this Agreement to the contrary, the disclosure, of the terms of this Agreement or of any Confidential Information of the other party shall constitute an incurable, material breach of this Agreement, and shall give rise to an immediate right of the non-breaching party to terminate this Agreement and obtain injunctive relief to prevent any further use or disclosure. Notwithstanding anything in this Agreement, the provisions of this Section 7 shall survive the expiration or termination of this Agreement and shall continue to bind both parties for a period of five (5) years.

**8. VIAONE Airtime Gateway IP**

a. **Ownership of the VIAONE Airtime Gateway Intellectual Property Rights.** Distributor agrees that VIAONE owns all rights, title, and interest in and to the VIAONE Airtime Gateway software, and any other technology or property provided by VIAONE and used by Distributor or any Third Party Processor to access the VIAONE Airtime Gateway, including all intellectual property rights therein.

b. **Restrictions on Use.** Distributor acknowledges that VIAONE Airtime Gateway software, its structure, organization and source code constitute valuable trade secrets of VIAONE. Accordingly, Distributor agrees that it will not, and will not permit any third party, to: (a) access to the VIAONE Airtime Gateway other than the parties authorized under this Agreement; (b) modify, create derivative works of, adapt, alter or translate the VIAONE Airtime Gateway; (c) sublicense, lease, rent, loan, distribute, provide access to, or otherwise transfer the any aspect of the VIAONE Airtime Gateway to any third party not authorized under this Agreement; (d) reverse engineer, decompile, disassemble, or otherwise derive or determine or attempt to derive or determine the source code (or the underlying ideas, algorithms, structure or organization) of any aspect of the VIAONE Airtime Gateway; or (e) copy, install or use the VIAONE Airtime Gateway except as expressly permitted in this Agreement.

c. **No Implied Licenses.** There are no implied licenses under this Agreement, and any rights not expressly granted to Distributor hereunder are reserved by VIAONE. Distributor is not granted any patent license under this Agreement. Distributor further agrees that its rights to



**AIRTIME GATEWAY AGREEMENT**

use the VIAONE Airtime Gateway are provided solely by this Agreement and are limited by the life, terms and conditions of this Agreement.

## 9. Warranties

a. **General Warranties.** Each party warrants that it has full right, power, and authority to enter into this Agreement and to perform its obligations and duties under this Agreement, and that the performance of such obligations and duties hereunder does not and will not conflict with or result in a breach of any other agreements of such party or any judgment, order, or decree by which such party is bound.

b. **Warranty Disclaimer.** THE AIRTIME GATEWAY AND ANY PRODUCT OR SERVICE SOLD USING THE AIRTIME GATEWAY ARE PROVIDED "AS IS," WITHOUT ANY WARRANTIES OF ANY KIND WHETHER EXPRESS OR IMPLIED, OR BASED ON STATUTE, TORT OR ANY OTHER THEORY OF LAW. VIAONE EXPRESSLY DISCLAIMS ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT OF THIRD PARTY RIGHTS. DISTRIBUTOR ACKNOWLEDGES AND AGREES THAT VIAONE MAKES NO REPRESENTATIONS AS TO THE REASONABLENESS, APPROPRIATENESS, QUALITY OR FUNCTIONALITY OF PRODUCTS AND SERVICES PROVIDED BY VIAONE THROUGH THE AIRTIME GATEWAY. ANY PRODUCT OR SERVICE PROVIDED BY VIAONE TO DISTRIBUTOR OR OTHER THIRD PARTIES ON DISTRIBUTOR'S BEHALF ARE ON AN "AS IS" BASIS AND SUBJECT TO THE TERMS AND CONDITIONS IMPOSED BY SUCH PRODUCT'S RESPECTIVE CARRIER AS WELL AS THE ABILITY OF SUCH CARRIER TO FULFIL SUCH TERMS AND CONDITIONS. IN NO EVENT SHALL VIAONE BE HELD LIABLE FOR THE QUALITY, THE TERMS OR CONDITIONS, OR THE FAILURE OF ANY CARRIER TO FULFILL ITS OBLIGATIONS OF ANY PRODUCT OR SERVICE SUPPLIED THROUGH THE AIRTIME GATEWAY.

c. **Limitation of Liability.** IN NO EVENT WILL VIAONE BE LIABLE TO DISTRIBUTOR OR ANY THIRD PARTY FOR ANY SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES OF ANY KIND INCLUDING THOSE RESULTING FROM INTERRUPTION OF USE, LOSS OR CORRUPTION OF DATA, VIRUSES, OR LOST PROFITS, ARISING FROM OR RELATED TO THIS AGREEMENT, THE AIRTIME GATEWAY WHETHER OR NOT DISTRIBUTOR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE. VIAONE'S TOTAL CUMULATIVE LIABILITY IN CONNECTION WITH THIS AGREEMENT OR THE AIRTIME GATEWAY WHETHER IN CONTRACT OR TORT OR OTHERWISE, SHALL NOT EXCEED THE AMOUNT OF FEES PAID TO VIAONE DURING THE TERM OF THIS AGREEMENT. FOR THE PURPOSES OF THIS PARAGRAPH, 9.C, FEES PAID TO VIAONE SHALL BE THE CUMULATIVE VALUE OF THE DIFFERENCE BETWEEN VIAONE'S BUY-RATES AND DISTRIBUTOR'S BUY RATES FOR ALL PRODUCTS AND SERVICES SOLD IN ACCORDANCE WITH THIS AGREEMENT, LESS ANY THIRD PARTY CHARGES PAID BY VIAONE AND DIRECTLY APPLICABLE TO DISTRIBUTOR'S SALES.

d. **No Warranties On Behalf of VIAONE.** Distributor will not make any warranties or representations to any sub-distributors, Retail Merchants or any other third parties concerning the Airtime Gateway or any VIAONE Service. Distributor shall indemnify and hold harmless VIAONE for (a) any warranties or representations Distributor makes on behalf of VIAONE to sub-distributors or Retail Merchants or any other third party, whether such warranties or representations are express or implied, and (b) any liability or obligation of Distributor to sub-distributor(s) or Retail Merchants created by any relationship or agreement(s) between Distributor and sub-distributor(s) or Retail Merchants or this Agreement whether such liability is based in contract, tort, or any other theory of law.

## 10. Non-Circumvention.
VIAONE acknowledges that during the term of this Agreement, VIAONE may be privy to information concerning Distributor's sub-distributors and/or retail locations. Unless this Agreement is terminated for cause or a material breach, VIAONE agrees that for the duration of this Agreement, and for one (1) year following its termination, VIAONE shall not in any way contract or directly provide any product or service to any sub-distributor or



**AIRTIME GATEWAY AGREEMENT**

retail location introduced to VIAONE by Distributor during the term of this Agreement, provided that VIAONE had no contractual relationship with such retail location or sub-distributor prior to being introduced to such sub-distributor or retail location by Distributor, and such retail location or sub-distributor continues to conduct business with VIAONE through Distributor during this Agreement up until the point of termination. This provision shall be inapplicable to any sub-distributor or retail location that terminates their affiliation with Distributor and/or ceases to conduct business with VIAONE through Distributor during the term of this Agreement.

**11. Indemnification.** Distributor shall indemnify/hold harmless, and defend, at its sole cost and expense, VIAONE against and from any and all claims, actions, suits, proceedings, damages, liabilities, losses, fines, penalties, expenses, attorneys fees and all other associated costs arising out of, or related in any manner whatsoever to Distributor, its agent's or employee's real or alleged wrongful, acts or omissions (whether tortuous or contractual) in connection with the placement or sale of VIAONE's Products and Services. VIAONE shall indemnify/hold harmless, and defend, at its sole cost and expense, Distributor against and from any and all claims, actions, suits, proceedings, damages, liabilities, losses, fines, penalties, expenses, attorneys fees and all other associated costs arising out of, or related in any manner whatsoever to VIAONE, its agent's or employee's real or alleged wrongful, acts or omissions (whether tortuous or contractual) in connection with the placement and sale of VIAONE's Products and Services.

**12. Event of Default; Remedies.** An event of default ("Event of Default") shall be deemed to have occurred if (i) a party shall materially breach any of its obligations hereunder and such breach shall remain uncured for a period of twenty (20) days following receipt of written notice thereof or (ii) a party shall file for protection under the Bankruptcy Code of the United States, shall make an assignment for the benefit of its creditors, or shall have an involuntary bankruptcy petition filed against it, and such petition shall not be dismissed within sixty (60) days after the filing thereof. Upon the occurrence of an Event of Default, the non-defaulting party may, at its option, elect to terminate this Agreement upon twenty (20) days notice.

**13. Effect of Expiration or Termination.** In the event this Agreement expires or is terminated pursuant to its terms, then except as provided in Sections 5, 7, 8, 9, 10, 11 and 12 herein, all rights and obligations of the parties hereto shall terminate and be of no further force or effect.

**14. Independent Contractors; No Joint Venture.** In performing their respective duties under this Agreement, each of the parties will be operating as an independent contractor; and nothing in this Agreement shall be deemed or construed in any manner as establishing a joint venture, partnership, association, franchisor/franchisee or other joint business relationship between the parties.

**15. Notices.** Any notice required to be given hereunder shall be in writing and shall be deemed given when delivered personally to the intended recipient or by facsimile transmission with delivery confirmation, by recognized overnight delivery service, or by certified or registered mail, postage prepaid to intended recipient (a) if to VIAONE at the address set forth in the recitals hereto and (b) if to Distributor, at the address set forth on the Information Sheet. Any party hereto may change its address for receipt of notices upon written notice to the other parties.

**16. Assignment; Successors.** Distributor may not assign, delegate, or transfer this Agreement or any of Distributor's rights or duties hereunder, without the prior written consent of VIAONE. Any attempted assignment or delegation of this Agreement or any of its provisions by Distributor is in violation of this Section 16 and shall be null and void. Notwithstanding the foregoing, VIAONE may assign its rights and duties hereunder in connection with a merger, consolidation, spin-off, corporate reorganization, acquisition, or sale of all or substantially all of its assets.



**AIRTIME GATEWAY AGREEMENT**

**17. Independent Business Judgment.** Distributor represents and warrants that it has read this Agreement, and that it fully understands its rights and obligations hereunder. Distributor further represents that it has sufficient business experience and expertise to independently evaluate the business opportunity offered hereby, that Distributor has been given the opportunity to consult with legal counsel of its choosing, and that, in executing this Agreement, Distributor is not relying on any claims, estimates, projections (financial or otherwise), or representations made by Distributor or VIAONE. In addition, Distributor acknowledges that VIAONE or Distributor does not guarantee or make any assurances whatsoever as to the Distributor's profitability or sustenance of current margins on Products and Services.

**18. Final Agreement; Amendments; Waivers.** This Agreement represents the final agreement between the parties with respect to the subject matter hereto, and hereby supersedes any and all prior agreements, written or oral, between the parties with respect to the matters contained herein. No amendment or modification of this Agreement shall be valid, unless made in writing and duly executed by VIAONE and Distributor. Notwithstanding anything to the contrary in this Agreement, this Agreement may be modified or terminated in any way by the written consent of Distributor and VIAONE.

**19. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including the remaining provisions, shall remain in full force and effect as if such invalid or unenforceable provision had never been included.

**20. Governing Law; Consent to Jurisdiction.** This Agreement shall be deemed to have been negotiated and entered into in the State of New York, and the interpretation and construction of this Agreement shall be governed by the laws of the State of New York, without regard to the conflict of laws principles thereof. In the event of any claim or dispute in respect of the subject matter hereof or the rights or obligations of the parties hereto, all actions or proceedings must be exclusively brought in the United States District Court for the Southern District of New York, or, if such court lacks subject matter jurisdiction, in the Supreme Court of the State of New York, County of New York. Each party hereto expressly waives the right to object to the exclusive jurisdiction of either court or the right to object to the venue of such court or that such court is an inconvenient forum.

**21. Consent to Arbitration.** Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator shall be final and binding on the parties, and judgment may be entered in any court having jurisdiction thereof. The arbitrator shall not be authorized to award either party extra contractual damages (i.e., compensatory or punitive damages); provided, however, that the arbitrator shall have the power to award the prevailing party its costs and fees.

**22. Counterparts; Facsimile Execution.** This Agreement may be executed by the parties hereto in any number of counterparts, each of which, when executed and delivered, shall be deemed to be an original and all of which shall constitute together but one and the same document. This Agreement may be executed in counterpart by facsimile signature, which signatures shall be treated as, and shall have the effect of, original and manually executed signatures.

[The remainder of this page left blank intentionally]

**VIAONE**

AIRTIME GATEWAY AGREEMENT

IN WITNESS WHEREOF, the parties have executed this document by their duly authorized officers as of date first written above.

**ACCEPTED AND AGREED:**

**Distributor**

By: *Tim Heachmack* (signature)  Dated: 7-29-05

Name: Timothy J. Beachmack

Title: CFO

**VIAONE:**
VIA ONE TECHNOLOGIES, INC.

By: _____  Dated: _____

Name: _____Asheem Aggarwal_____

Title: _____CEO/President_____

**Daniel Ely**

For himself personally:

_____  Date: _____



**AIRTIME GATEWAY AGREEMENT**

## AUTOMATED CLEARING HOUSE AUTHORIZATION
("ACH Authorization Form")

Subject to the terms set forth in the Airtime Gateway Agreement, dated as of __7-27-2005__, between __Mr PREPAID__ Distributor_____ ("Distributor") and Via One Technologies, Inc. ("VIAONE"), the Operating Rules of the National Automated Clearing House Association and applicable federal regulations governing Automated Clearing House ("ACH") transactions, Distributor hereby authorizes VIAONE or any of its subsidiaries or affiliates, to initiate debit and credit entries to the account specified below for obligations owing from time to time resulting from the transactions described in the aforementioned Airtime Gateway Agreement.

Under penalty of fraud, signatory confirms that signatory is a duly authorized check signor on the account identified below, has the required corporate authority within Distributor's company to provide the authorization contained in this form and thereby authorizes all of the above, with such evidence being provided in such signatory's signature below.

Financial Institution Name: __1ST Mariner Bank__   Branch: __Pikesville, MD__
City: __Baltimore__   State: __MD__   Zip: __21208__
Routing Number: __252070752__   Account Number: __1080481__   Checking ☐   Savings ☒

In the event that VIAONE or any of its subsidiaries or affiliates incurs any charges due to the failure of an ACH debit to properly process to Distributor's account specified above or in the event that such account does not have sufficient funds to permit the ACH debit to go through, Distributor hereby grants VIAONE the authority to debit the account for all such charges and expenses incurred together with a $300 administrative fee. This authorization is to remain in full force and effect until VIAONE has received written notification from a duly authorized representative of Distributor of its termination in such time and in such manner as to afford VIAONE and/or the Financial Institution named above a reasonable opportunity to comply with such notification.

Name on Account/Merchant: __Mr Prepaid__   Business ☒   Personal ☐
Address: __300 Reisterstown Rd__
City: __Baltimore__   State: __MD__   Zip: __21208__
Name of Signing Authority: __Daniel Ely__   Signature: __[signed]__

Please attach a voided check from the account specified above
(Starter checks will not be accepted)





AIRTIME GATEWAY AGREEMENT

## PRODUCT PRICING SHEET – Airtime Gateway

The percentages below represent the Distributor Buy Rates (discounts off the face value of prepaid PINS) for the corresponding Carriers.

| Carrier | Category | Discounts |
|---|---|---|
| Airvoice | wireless | 20.00% |
| AirTel | wireless | 12.00% |
| Boost Mobile | wireless | 15.00% |
| Call Plus | wireless | 22.00% |
| Cingular GSM | wireless | 22.00% |
| JusTalk | wireless | 22.00% |
| JusTalk $50 | wireless | 17.00% |
| Locus | wireless | 17.00% |
| O-Mobile | wireless | 23.00% |
| O-Mobile Cash $14.99 | wireless | 12.00% |
| Omni Prepaid | wireless | 23.00% |
| PagePlus | wireless | 21.00% |
| STI Mobile | wireless | 15.00% |
| T-Mobile | wireless | 16.00% |
| Tracfone | wireless | 12.00% |
| Verizon | wireless | 14.00% |
| Verizon Set-up $80 | wireless | 14.00% |

| | | |
|---|---|---|
| Extra | LD | 25.00% |
| Discover America | LD | 45.00% |
| Octilla | LD | 20.00% |
| Prepay USA | LD | 40.00% |
| SDI | LD | 25.00% |
| Sin Fronteras | LD | 35.00% |
| STI New Era | LD | 25.00% |
| Viva Fiesta | LD | 30.00% |
| Viva Fiesta Especial | LD | 35.00% |

As noted in the Airtime Gateway Agreement the above rates are subject to change by VIAONE at VIAONE's sole discretion upon 3 days prior notice to Distributor.